## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| J.D., a minor, by and through his mother and Next Friend SUZANNE DEVINE, Individually and on Behalf of All Others Similarly Situated<br>625 Fair Oaks Ave., Suite 390<br>South Pasadena, CA 91030<br><br>            Plaintiff,<br><br>v.<br><br>BETHESDA SOFTWORKS LLC, a Montgomery County, Maryland Resident<br>1370 Piccard Drive<br>Rockville, Maryland 20850<br>SERVE ON: RESIDENT AGENT<br>J. Griffin Lesher, Secretary<br>1370 Piccard Drive<br>Rockville, Maryland 20850,<br><br>BETHESDA SOFTWORKS, a Montgomery County, Maryland Resident<br>1370 Piccard Drive<br>Rockville, Maryland 20850<br>SERVE ON: RESIDENT AGENT<br>J. Griffin Lesher, Secretary<br>1370 Piccard Drive<br>Rockville, Maryland 20850,<br><br>and<br><br>ZENIMAX MEDIA INC., a Montgomery County, Maryland Resident<br>1370 Piccard Drive<br>Rockville, Maryland 20850<br>SERVE ON: RESIDENT AGENT<br>J. Griffin Lesher, Secretary<br>1370 Piccard Drive<br>Rockville, Maryland 20850<br><br>            Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES:**<br><br>1. Breach of Contract<br>2. Unjust Enrichment<br>3. Promissory Estoppel<br>4. Deceit or Fraud<br>5. Fraudulent Concealment<br>6. Negligent Misrepresentation<br>7. Tort Arising Out of Breach of Contract<br>8. Breach of Express Warranty<br>9. Violation of Maryland Consumer Protection Act<br><br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.       Plaintiff J.D. ("Plaintiff"), a minor, brings this suit against Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc. (collectively, "Defendants") to recover damages owed to him and others similarly situated.

2.       Defendants are the developers and publishers of the video game Fallout 4 and the downloadable content ("DLC") for it.  Defendants sold a season pass for the game (the "Season Pass") which was advertised by Defendants as follows: "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."  Plaintiff and other purchasers of the Season Pass did not in fact receive all DLC for the game.  Instead, Defendants subsequently released content through their Creation Club, which in fact is DLC, but was not provided to Season Pass holders.

3.       As a result of Defendants' fraud and other actions, Plaintiff and other purchasers of the Season Pass have suffered significant damages.

## PARTIES

4.       Plaintiff J.D. ("Plaintiff"), a minor, is a citizen of the State of California.  Plaintiff is a purchaser of the Season Pass.  J.D.'s mother, Suzanne Devine, is his next friend and legal guardian in this litigation until he turns 18.

5.       Defendant Bethesda Softworks LLC is a Delaware limited liability company with its principal place of business in Rockville, Maryland.  Bethesda Softworks LLC is a video game developer and publisher which publishes, among other games, the Elder Scrolls and Fallout series of videogames.  Games in both series are created by Bethesda Game Studios, a video game developer that is a division of Bethesda.  The Elder Scrolls games take place in a medieval fantasy universe, while the Fallout games take place in a post-apocalyptic science fiction universe.  Games from these two series are consistently among the best sellers in the year of their release,

typically selling millions of copies within the first few weeks, and continue to sell many more copies for years thereafter.

6.      Defendant Bethesda Softworks is a business entity, form unknown, with its principle place of business in Rockville, Maryland.   On information and belief, Bethesda Softworks is a trade name of Bethesda Softworks, LLC.   Plaintiff will refer to Bethesda Softworks, LLC and Bethesda Softworks collectively as "Bethesda."

7.      Defendant ZeniMax Media Inc. is a Delaware corporation with its principal place of Business in Rockville, Maryland.  ZeniMax Media Inc. is a video game holding company that owns, among other companies, Bethesda.

8.      Bethesda and ZeniMax Media Inc. are collectively referred to in this Complaint as "Defendants."

9.      Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

10.      Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the proposed class, at least one member of the proposed class has different citizenship from a defendant and the total matter in controversy exceeds $5,000,000.

12.      Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, because Defendants carry on business and reside within this judicial district, and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## FACTS

### A.  Background Information on Downloadable Content ("DLC").

13.      Beginning in the mid 2000s, the video game industry developed the business practice of selling downloadable content ("DLC").  DLC encompasses a wide variety of content that is developed so that it can be added to a video game contemporaneously with the release of the game or subsequent to the release of the game.  The DLC business model allows publishers to further monetize a game after it is released by selling the DLC to purchasers of the game.  DLC may be developed by the same studios that are responsible for creating the game itself or by outside entities that enter into contracts to create DLC for the game.

14.      DLC can encompass a wide variety of content that is added to the game, depending on the game's genre.  For example, a racing game may add additional race tracks and cars as DLC, while a shooter game may add additional guns that the player may use within the game.  "Skins" are a common type of DLC.  Skins change the cosmetic appearance of items

within the game.  For example, a shooter game may sell gun skins that apply a camouflage pattern to the gun as DLC.

15.       Defendants were pioneers of selling DLC.  In 2006 Defendants released DLC for their game The Elder Scrolls IV: Oblivion ("Oblivion"), including the "Horse Armor Pack" DLC (armor that could be worn by the player's horse).  In 2007, Bethesda's Vice President of Public Relations and Marketing, Pete Hines, was quoted in the media as saying that "We were the first ones to do downloadable content like that - some people had done similar things, but no one had really done additions where you add new stuff to your existing game."  The Horse Armor Pack DLC was widely ridiculed by video game journalists and Defendants themselves increased the price of it as an April Fool's joke in 2009, when they held a 50% off sale for all of Oblivion's DLC, with the exception of the Horse Armor Pack, which was twice as expensive as usual.

16.       As DLC proliferated in the video game industry, publishers began to offer "season passes."  Season passes are a bundle of DLC offered to consumers, typically at a discount over purchasing DLC à la carte.  Season passes specify the content that will be included with the purchase of the season pass, either by listing the specific DLC that will be included, or by stating that the season pass encompasses all DLC that will be released for the game.  Season passes are frequently available for purchase before the game itself is released, well before the DLC included in the season pass is released, and often before the DLC itself has been created.

**B.  Background Information on Mods.**

17.       For several decades, video game players have created modifications, commonly referred to as "mods" for video games.  Mods predate DLC, but are similar to DLC in the scope of content that mod creators may add to a game.  However, a crucial difference between mods and DLC is that mods are created and distributed for free by fans, while DLC is created and sold

by the publisher of the game for profit.

18.     In April of 2015 Defendants partnered with Valve Corporation ("Valve") to offer paid mods for The Elder Scrolls V: Skyrim.  Mod creators were able to post their creations on Valve's digital distribution platform, Steam, and set a price for purchase.  Revenue from sales were split between the mod creator, Defendants, and Valve.  The announcement of paid mods was met with widespread consumer backlash and negative press coverage, and Valve and Defendants terminated the program and refunded purchasers less than a week after it had launched.  Among other problems, at least one paid mod was removed from sale before the program was terminated because it used content from a mod created by another individual.

## C. Defendants Announce and Release Fallout 4 and the Season Pass.

19.     Defendants first announced Fallout 4 in June 2015.  In a September 9, 2015 posting on Bethesda's website, Defendants announced the Fallout 4 Season Pass.  Defendants explained that:

> We've always done a lot of DLC for our games. We love making them and you always ask us for more. To reward our most loyal fans, this time we'll be offering a Season Pass that will get you all of the Fallout 4 DLC we ever do for just $30. Since we're still hard at work on the game, we don't know what the actual DLC will be yet, but it will start coming early next year. Based on what we did for Oblivion, Fallout 3, and Skyrim, we know that it will be worth at least $40, and if we do more, you'll get it all with the Season Pass.

This announcement was widely reported on in the news media.

20.     Defendants offered the Season Pass for sale through a number of digital and physical stores.  Defendants offered the Season Pass for sale separate from Fallout 4 as well as in a bundle with the game itself.

21.     Regardless of where the Season Pass was offered for sale, the Season Pass's description consistently stated "get the Fallout 4 season pass and get all Fallout 4 DLC for one

S.P.E.C.I.A.L. price." On information and belief, Defendants either directed these marketplaces to include this description in the product listings or were able to directly insert it into the listings themselves. Furthermore, when Defendants sold physical copies of the Season Pass, in the form of redeemable codes printed on cards, the same language appeared on the packaging as well. Moreover, essentially identical language appeared on product listings and packaging in foreign markets as well, with the relevant verbiage translated into a variety of other languages. Physical copies of Fallout 4 contained a flyer advertising the Season Pass and stating "All Access Granted-Season Pass."

22. Fallout 4 was released on November 10, 2015 and is available to play on Windows personal computers ("PCs"), Microsoft Corporation's Xbox One ("Xbox") video game console, and Sony Interactive Entertainment LLC's PlayStation 4 ("PlayStation'). According to a post by Defendants on Bethesda's website, "launched with approximately 12 million units worldwide, representing sales in excess of $750 million." Defendants reported that some of their retail partners had stated that Fallout 4 set records for the most pre-ordered game of 2015 as well as for launch day sales.

23. Following the launch of Fallout 4, Defendants released several DLC for the game. Included in the DLC was new weapons, apparel, locations, characters, creatures, and quests.

**D. Defendants Announce Creation Club.**

24. Creation Club was announced on June 11, 2017. On their website, Defendants characterize Creation Club as "a collection of all-new content for both Fallout 4 and Skyrim. It features new items, abilities, and gameplay created by Bethesda Games Studios and outside development partners including the best community creators. Creation Club content is fully curated and compatible with the main game and official add-ons." Defendants state that:

> Creation Club will feature a wide variety of content including but
> not limited to:
> WEAPONS: New weapons, material skins, parts, etc.
> APPAREL: New outfits, armor, and items for your character.
> WORLD: New locations, decorations, foliage, etc.
> CHARACTERS: New abilities, characters, companions, etc.
> CREATURES: New enemies, mounts, pets, etc.
> GAMEPLAY: New types of gameplay like survival mode, etc.

Defendants also explain that Creation Club content "is available via in-game digital marketplaces in both Fallout 4 and Skyrim and purchased with Credits. Credits are available for purchase on PSN, Xbox Live, and Steam."

25.     In a Frequently Asked Questions section of their website, Defendants posted the following:

> **Is Creation Club paid mods?**
> No. Mods will remain a free and open system where anyone can
> create and share what they'd like. Also, we won't allow any existing
> mods to be retrofitted into Creation Club, it must all be original
> content. Most of the Creation Club content is created internally,
> some with external partners who have worked on our games, and
> some by external Creators. All the content is approved, curated, and
> taken through the full internal dev cycle; including localization,
> polishing, and testing. This also guarantees that all content works
> together. We've looked at many ways to do "paid mods", and the
> problems outweigh the benefits. We've encountered many of those
> issues before. But, there's a constant demand from our fans to add
> more official high quality content to our games, and while we are
> able to create a lot of it, we think many in our community have the
> talent to work directly with us and create some amazing new things.

In short, Creation Club content is indistinguishable from DLC, including DLC released for Fallout 4 by Defendants themselves.  In fact, in an interview with GameSpot following Creation Club's announcement, Bethesda's Vice President of Public Relations and Marketing, Pete Hines, characterized Creation Club content as "almost like mini DLCs in some way."  He went on to explain that "they are internally created, or internally created along with external developers. They're fully internally developed and work the same across all three platforms. They're

guaranteed to work with your save games. They don't turn off Achievements or Trophies, unlike mods. They're guaranteed to work with all DLC. They'll be localized as needed. They will be put out and created as official content from the studio." He explained that "It's managed by us as official content and then put up and made available." Hines subsequently explained on Twitter that Creation Club content is "tested by our QA and will be compat [sic] with game and DLC, doesn't turn off achievements and trophies. it's like mini DLCs."

26.     The Fallout 4 Creation Club launched on August 28, 2017. At launch, Defendants offered a number of items through Creation Club, including weapons, apparel, and quests. For example, in an apparent reference to their prior Horse Armor Pack DLC, Defendants offered "Power Horse Armor" (armor made out of toy horses and intended to be worn by a human). Defendants also offered paint jobs for various items within Fallout 4 i.e. skins. Following the launch of Creation Club, Defendants have continued to release dozens of additional items for purchase with Credits. On information and belief it would cost at least $150 worth of Credits to purchase all of the Fallout 4 Creation Club content released thus far.

27.     Defendants have not made Fallout 4 Creation Club content available to purchasers of the Season Pass. Nor have Defendants corrected the marketing of the Season Pass to reflect the fact that it does not include Creation Club content. In fact, listings for the Season Pass *still* say that purchasers will "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price." Instead, Defendants have created a distinction without a difference so that they can sell Creation Club content to purchasers of the Season Pass

28.     On information and belief, following the backlash resulting from their attempt to sell paid mods for Skyrim, Defendants instead opted to assert control over the commercial content creation process for their games and developed the Creation Club. Doing so allowed Defendants

to maintain quality control over content sold for their games.  However, this came at the cost of requiring Defendants to develop the content internally or with third parties working as independent contractors under the supervision of Defendants.  In short, Defendants' solution to the problems present in the paid mod business model was to instead sell additional DLC.  Furthermore, on information and belief, Defendants' had settled on this solution well before the Creation Club was announced, meaning Defendants knew that the Season Pass would not provide purchasers with all DLC as promised.

## CLASS REPRESENTATIVE

29.     Plaintiff J.D. a minor, purchased Fallout 4 and the Season Pass.  In purchasing the Season Pass, J.D. relied on Defendants' representation that he would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price" (i.e. that he would receive all of the Fallout 4 DLC.) and yet, contrary to what he expected, the Season Pass did not give him access to the content from the Creation Club.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on his own behalf, through his representative, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Class consists of millions of Season Pass holders victimized by Defendants' fraud and other actions.  Specifically, Plaintiff brings this suit on behalf of the following Class:

> The **"Worldwide Damages Class"**:  All persons who paid for and/or acquired the Season Pass for Fallout 4, regardless of platform or method of purchase.  The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, Defendants Bethesda Softworks LLC, Bethesda Softworks, and ZeniMax Media Inc., any entity in which Defendants Bethesda Softworks LLC or ZeniMax Media Inc. have a controlling interest, Defendants Bethesda Softworks LLC, Bethesda Softworks, or

ZeniMax Media Inc.'s officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

31.     J.D. will be the class representative of the Worldwide Damages Class.

32.     Defendants subjected Plaintiff and the Class to the same wrongdoing and harmed them in the same manner. Now, Plaintiff and the Class seek to enforce the same rights and remedies pursuant to the same legal theories: breach of contract, unjust enrichment, promissory estoppel, fraud or deceit, fraudulent concealment, negligent misrepresentation, tort arising out of breach of contract, breach of express warranty, and violation of the Maryland Consumer Protection Act.

33.     Numerosity: The proposed class is so numerous that individual joinder of all its members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the "Worldwide Damages Class" consists of at least one million members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

34.     Typicality: Plaintiff's claims are typical of the claims of the Class in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and is based on the same legal theory as their claims.   Moreover, Plaintiff's measure of damages is the same as that of the Class.

35.     Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Undersigned counsel has substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do

so. Neither Plaintiff nor his counsel have any interests adverse to the Class.

36. <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class suffered the same harm as a result of Defendants' unlawful conduct. The same claims and defenses are at issue for all class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class Members to protect their interests.

37. <u>Common Questions of Law and Fact Predominate</u>: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Worldwide Damages Class and which predominate over any question of law or fact affecting only individual members of the Worldwide Damages Class. Common questions of law and fact include, but are not limited to, the following:

i.     Are members of the Worldwide Damages Class entitled to all Fallout 4 DLC as a result of their purchase of the Season Pass?

ii.     Is Creation Club content DLC?

iii.     Did Defendants make affirmative misrepresentations that the Season Pass would provide access to all Fallout 4 DLC?

iv.     Did Defendants conceal and/or omit the fact that the Season Pass would not include Creation Club content?

v.     Did Class Members suffer damages as a result of Defendants' actions?

vi.     Did Defendants breach their contracts with class members by failing to provide them with access to Creation Club content?

vii.     Did Defendants unjustly enrich themselves at the expense of Class Members by failing to provide Class Members with access to Creation Club content?

viii.     Should Defendants be subject to promissory estoppel by failing to provide Class Members with access to Creation Club content?

ix.     Did Defendants commit promissory estoppel by failing to provide Class Members with access to Creation Club content?

x.     Did Defendants defraud Class Members?

xi.     Did Defendants engage in negligent misrepresentation?

xii.     Did Defendants engage in tortious conduct arising out of breach of contract?

xiii.     Did Defendants breach express warranties with regards to the Season Pass?

xiv.     Did Defendants violate the Maryland Consumer Protection Act?

38.    <u>Notice</u>: Notice can be provided via internet publication, published notice and/or through mail and paid for by the Defendants.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (By All Plaintiffs Against the Defendants)

39.     The allegations of paragraphs 1 through 38 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

40.     Season Passes were originally sold to Plaintiff and class members by Defendants.

41.     Defendants directly sold Season Passes to Plaintiffs, sold Season Passes to Plaintiffs through physical and/or online marketplaces that acted as Defendants' agents for the purposes of the sale, and/or sold Season Passes to physical and online marketplaces, which in turn sold the Season Passes to Plaintiffs, effectuating an assignment of the rights conferred by the Season Passes.

42.     Accordingly, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs were sold Season Passes for Fallout 4.

43.     Pursuant to the terms of their contracts with Defendants, Plaintiffs were entitled to "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

44.     Creation Club content constitutes DLC.

45.     Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the Season Pass purchase.

46.     Defendants breached their obligations under the agreement to Plaintiffs by failing to provide Plaintiffs with access to all Creation Club content.

47.     As a direct and proximate result of Defendants' breach, Plaintiffs have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## SECOND CLAIM FOR RELIEF

## UNJUST ENRICHMENT

### (By All Plaintiffs Against the Defendants)

48.     The allegations of paragraphs 1 through 47 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

49.     Plaintiffs conferred a benefit upon Defendants, namely revenue from Plaintiffs' purchase of the Season Pass.

50.     Defendants were aware of the benefit they received from Plaintiffs.

51.     It is inequitable for Defendants to retain the benefit conferred on them by Plaintiffs because they received revenue from the sale of Season Passes while falsely claiming that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price," when they would not in fact receive the DLC from Creation Club.

52.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

### THIRD CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

### (By All Plaintiffs Against the Defendants)

53.     The allegations of paragraphs 1 through 52 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

54.     Defendants made a clear and definite promise to purchasers of the Season Pass: "get the Fallout 4 season pass and get all Fallout 4 DLC for one S.P.E.C.I.A.L. price"

55.     Creation Club content constitutes DLC.

56.     Defendants had a reasonable expectation that their offer would induce action on the part of Plaintiffs, namely that it would induce Plaintiffs to purchase the Season Pass.

57.     Defendants' actions induced actual and reasonable action by Plaintiffs, namely purchasing the Season Pass.

58.     Defendants' actions caused a detriment that could only be avoided by the enforcement of their promise that purchasers of the Season Pass would receive all DLC, including all Creation Club content.

59.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## FOURTH CLAIM FOR RELIEF

## FRAUD OR DECEIT

### (By All Plaintiffs Against the Defendants)

60.     The allegations of paragraphs 1 through 59 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

61.     Defendants made a false representation of material fact, namely that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

62.     Defendants knew their representations were false or acted with such reckless indifference to the truth that it would be reasonable to charge Defendants with knowledge of the falsity of their representations.

63.     Defendants intended that Plaintiffs would act in reliance of such statements.

64.     Plaintiffs did justifiably rely on the representations of Defendants.

65.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

66.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## FIFTH CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

### (By All Plaintiffs Against the Defendants)

67.     The allegations of paragraphs 1 through 66 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

68.     Defendants intentionally concealed a material fact that they had a duty to disclose, namely that the Season Pass would not in fact provide Plaintiffs with access to all Fallout 4 DLC and that it would not provide them with access to all Creation Club content.

69.     Defendants intended to induce Plaintiffs to act differently from how Plaintiffs would have acted had they known the true facts.

70.     Because of the concealment Plaintiffs acted in a manner different from how they would have acted had they known the true facts.

71.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

72.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## SIXTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (By All Plaintiffs Against the Defendants)

73.     The allegations of paragraphs 1 through 72 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

74.     Defendants owe a duty of care to Plaintiffs, including, but not limited to, one arising out of their role as the entities that directly or indirectly sold and/or marketed the DLC to Plaintiffs.

75.     Defendants negligently made a false statement of material fact about the Season Pass, namely that purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

76.     Defendants intended that Plaintiffs would ac in reliance upon the statement.

77.     Defendants knew that Plaintiffs probably would rely on the statement, which, if false, would cause loss or injury to Plaintiffs.

78.     Plaintiffs justifiably acted in reliance on the statement.

79.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

80.     Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## SEVENTH CLAIM FOR RELIEF

## TORT ARISING OUT OF BREACH OF CONTRACT

### (By All Plaintiffs Against the Defendants)

81.     The allegations of paragraphs 1 through 80 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

82.     Season Passes were originally sold to Plaintiff and class members by Defendants.

83.     Defendants directly sold Season Passes to Plaintiffs, sold Season Passes to Plaintiffs through physical and/or online marketplaces that acted as Defendants' agents for the purposes of the sale, and/or sold Season Passes to physical and online marketplaces, which in turn sold the Season Passes to Plaintiffs, effectuating an assignment of the rights conferred by the Season Passes.

84.     Accordingly, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs were sold Season Passes for Fallout 4.

85.     Pursuant to the terms of their contracts with Defendants, Plaintiffs were entitled to "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

86.     Creation Club content constitutes DLC.

87.     Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the Season Pass purchase.

88.     Defendants breached their obligations under the agreement to Plaintiffs by failing to provide Plaintiffs with access to all Creation Club content.

89.     In stating that Plaintiffs would "get all Fallout 4 DLC for one S.P.E.C.I.A.L.

price" upon purchasing the Season Pass, Defendants knew their representations were false or acted with such reckless indifference to the truth that it would be reasonable to charge Defendants with knowledge of the falsity of their representations.   In the alternative, Defendants acted negligently in making this statement.   Moreover, Defendants intentionally concealed that the Season Pass would not in fact provide Plaintiffs with access to all Fallout 4 DLC and that it would not provide them with access to all Creation Club content.

90.      A nexus exists between Defendants' tortious acts and breach of the underlying contract such that the tortious conduct and the contract are so intertwined that one cannot be viewed in isolation from the other.

91.      As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

92.      Further, Defendants acted with malice in making their misrepresentations to Plaintiffs and Plaintiffs are accordingly entitled to punitive damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages; attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## EIGHTH CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

### (By All Plaintiffs Against the Defendants)

93.      The allegations of paragraphs 1 through 92 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

94.     A warranty existed for the Season Pass.

95.     Under the terms of the warranty, purchasers would "get all Fallout 4 DLC for one S.P.E.C.I.A.L. price."

96.     Creation Club content constitutes DLC.

97.     The Season Pass did not conform to the warranty because purchasers of the Season Pass did not receive Creation Club content.

98.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages.

99.     Before filing this lawsuit, Plaintiff provided Defendants with written notice of their breach of warranty on behalf of himself and all purchasers of the Season Pass.   On information and belief, Defendants have been aware for many months of complaints by Season Pass purchasers who have not received access to Creation Club content, but have willfully chosen to not abide by the terms of the warranty Defendants created.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages;  attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## NINTH CLAIM FOR RELIEF

## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT ("MCPA"), MD. CODE COMMERCIAL LAW § 13-101 *ET SEQ.*

### (By All Plaintiffs Against the Defendants)

100.    The allegations of paragraphs 1 through 99 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated Season Pass holders.

101.    Plaintiff is a consumer within the meaning of the MCPA.

102.    The Season Pass is used primarily for personal, household, and/or family purposes and constitutes a consumer contract, consumer goods and/or consumer services within the meaning of the MCPA.

103.    Among other violations of the MCPA, Defendants have done at least the following:

    i.    Defendants made false and/or misleading oral and/or written statements, visual descriptions, and/or other representations that had a capacity, tendency, and/or effect of deceiving or misleading consumers, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.

    ii.    Defendants represented that the Season Pass has a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which it does not have, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.

    iii.    Defendants represented that the Season Pass is of a particular standard, quality, grade, style, or model which it not, namely that the Season Pass would provide purchasers with access to all DLC, when it in fact did not provide access to Creation Club content.

    iv.    Defendants failed to state a material fact if the failure deceives or tends to deceive, namely by failing to state that the Season Pass did not in fact provide access to all DLC, including Creation Club content.

    v.    Defendants advertised or offered the Season Pass without intent to sell, lease,

or rent it as advertised or offered, namely by failing to sell consumers a Season Pass that actually provides access to all DLC, including Creation Club content.

vi.    Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with the promotion or sale of the Season Pass, namely with regards to the representation that the Season Pass that provides access to all DLC, including Creation Club content.

vii.   Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with Defendants' subsequent performance with respect to their obligations under the terms of the Season Pass.

104.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered an injury and/or loss and have sustained damages.

WHEREFORE, Defendants are jointly and severally liable to Plaintiff and the class for compensatory damages; punitive damages;. attorneys' fees; all loss of interest on all amounts paid to Defendant; and costs and all other damages suffered by Plaintiff and members of the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants Bethesda Softworks LLC, Bethesda Softworks, and Zenimax individually and severally as follows:

Plaintiffs seek to recover the following damages and obtain the following relief from Defendants:

(a)    Economic loss and damages suffered by Plaintiffs;

(b)     Punitive damages;

(b)     All reasonable and necessary attorneys' fees;

(c)     Court costs;

(d)     Pre and post-judgment interest;

(e)     And such other relief to which Plaintiffs may show themselves justly entitled.

Dated: June 27, 2019                        Respectfully Submitted,


Charles Gilman, Esq. (Bar No. 26435)
cgilman@gblegalteam.com
H. Briggs Bedigian, Esq. (Bar No. 27113)
Hbb@gblegalteam.com
**GILMAN & BEDIGIAN, LLC**
1954 Greenspring Drive, Suite 250
Timonium, MD 21093
Tel: (410) 560-4999
Fax: (410) 308-3116

Filippo Marchino, Esq. (Pro Hac Vice Forthcoming)
fm@xlawx.com
Thomas E. Gray, Esq. (Pro Hac Vice Forthcoming)
tg@xlawx.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave., Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370


**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Charles Gilman