**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **JACOB DEVINE,** *Individually and on Behalf* | | |
| *Of All Others Similarly Situated* | * | |
| | | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: PWG 19-cv-2009** |
| | * | |
| **BETHESDA SOFTWORKS, LLC,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In July 2019, Plaintiff, Jacob Devine, filed this putative class action against Defendants Bethesda Softworks, Bethesda Softworks, LLC, and ZeniMax Media, Inc., alleging damages resulting from his purchase of a "Season Pass" access to downloadable content for the video game FALLOUT 4. Compl., ECF No. 1. Defendants filed a motion to compel arbitration, asserting that Jacob Devine assented to four separate Terms of Service ("TOS") agreements, each of which not only requires him to arbitrate this dispute but also delegates all issues related to arbitrability (which necessarily includes the issue of whether the parties agreed to "arbitrate arbitrability") to the arbitrator. Mot., ECF No. 141. Plaintiff also seeks an order, pursuant to Federal Rule of Civil Procedure 23(d), that invalidates a new TOS that was issued to FALLOUT 4 players by Defendants on December 13, 2021, which he argues is an intentional effort by Defendants to sabotage the class action. ECF No. 177. Defendants argue that Plaintiff's motion is premature, requiring first an arbitral review of the validity of the class action waivers. ECF No. 180.

I have reviewed the filings[1] and find a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, I shall grant Defendants' motion and compel arbitration, and I shall defer ruling on Plaintiff's Rule 23(d) motion while this case remains stayed.

## BACKGROUND

Plaintiff Jacob Devine, a minor at the time,[2] purchased the video game, FALLOUT 4, at a GameStop store in California a few weeks after the release of the game in November 2015. Am. Compl. ¶¶ 22, 29, ECF No. 39. FALLOUT 4 was developed by Defendant, Bethesda Softworks, LLC ("Bethesda"), which is owned by Defendant ZeniMax Media Inc. ("ZeniMax"), a video game holding company. *Id.* ¶¶ 5-7.[3]  The FALLOUT 4 game was available to play on Windows personal computers, Microsoft Corporation's Xbox One video game console, and Sony Interactive Entertainment LLC's PlayStation 4. *Id.* ¶ 22.

In addition to developing video games, Bethesda also develops and publishes downloadable content[4] that can be purchased and added to their video games. *Id.* ¶¶ 2, 15, 19.  In September 2015, Bethesda announced the FALLOUT 4 Season Pass, which was available for sale from its website as well as through games stores, and it was described as offering access to "all"

---

[1]     Mot., ECF No. 141 (Sealed Mem., ECF No. 142); Resp., ECF No. 150 (Sealed Resp., ECF No. 153); Reply, ECF No. 157 (Sealed Reply, ECF No 159); Am. Compl., ECF No. 39; and all the attached exhibits.

[2]     Jacob Devine turned 18 after the filing of this lawsuit.  Am. Compl. n.2, ECF No 39.  He was born on September 26, 2001 and turned 18 on September 26, 2019.  Holbrook Decl. ¶ 42, ECF No. 141-2 (ECF No. 142-1 SEALED) (citing Game Activity Table, Ex. 19, ECF No. 141-21 (ECF No. 142-2 SEALED).  Pursuant to the agreement of the parties, Plaintiff's personal information was unsealed.  *See* Letter Order, ECF No. 182.

[3]     Plaintiff alleges that Defendant Bethesda Softworks is a trade name of Bethesda Softworks, LLC. Am. Compl. ¶ 6.

[4]     Downloadable content refers to a wide variety of additional content that can be purchased, downloaded, and added to a video game to enhance its look and feel or provide additional interactive features to the game. Am. Compl. ¶¶ 13-15. Plaintiff distinguishes downloadable content from "modifications" (also referred to as "mods"), which are typically created and distributed for free by game fans. *Id.* ¶¶ 17-18.

FALLOUT 4 downloadable content "for one S.P.E.C.I.A.L. price." *Id.* ¶¶ 19-21. Jacob Devine purchased the Season Pass for Xbox One using his Xbox Console, from the Xbox Games Store/Microsoft Store on April 27, 2019, a few months before he turned 18. *Id.* ¶ 29. He alleges that "contrary to what he expected, the Season Pass did not give him access" to all downloadable content. *Id.* On July 9, 2019, this lawsuit (a putative class action) was filed to recover damages owed to him and others who purchased a Season Pass and did not receive all downloadable content for the FALLOUT 4 game. *Id.* ¶¶ 1-3. Plaintiff asserts nine causes of action: (1) Breach of Contract; (2) Unjust Enrichment; (3) Promissory Estoppel; (4) Fraud or Deceit; (5) Fraudulent Concealment; (6) Negligent Misrepresentation; (7) Tort Arising Out of Breach of Contract; (8) Breach of Express Warranty; and (9) Violation of Maryland Consumer Protection Act ("MCPA").

Defendants contend that Jacob Devine must arbitrate his dispute because he agreed to the ZeniMax Terms of Service Agreement when he created his Bethesda.net account on August 29, 2016. Mot. Mem. 2-4, ECF No. 141-1 (ECF No. 142 SEALED). Further, Defendants assert, Jacob Devine agreed to the Xbox Live Terms of Use when he created his Xbox Live account on November 24, 2014, and it also contains an arbitration clause. *Id.* at 5. And he agreed to the Microsoft Services Agreement and the Microsoft Store Terms of Service, both of which include a similar arbitration clause. *Id.* at 6-12. Microsoft acquired ZeniMax on March 9, 2021. *Id.* at 13. In essence, Defendants seek to enforce four agreements that (individually and collectively) compel Jacob Devine to arbitrate his claims against them. Each agreement contains within it an arbitration clause, and each arbitration clause contains within it a delegation provision (delegating to the arbitrator all issues regarding the scope and enforceability of the arbitration agreements). Defendants request a stay of this litigation pending arbitration of all issues before the arbitrator. *Id.* at 25.

Jacob Devine opposes Defendants' motion, making multiple arguments to refute Defendants' contentions, including that he was a minor and did not assent to Bethesda's agreement, and contending that Defendants cannot rely on Microsoft's agreements because they did not become Microsoft affiliates until almost two years after this lawsuit was filed. Resp. 1, ECF No. 150 (ECF No. 153 SEALED).

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") reflects a strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court may compel arbitration under the FAA if there is "an underlying agreement between the parties to arbitrate." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). If the parties dispute the formation or validity of the arbitration agreement, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The facts that the parties rely on in seeking or opposing a motion for summary judgment must be in an admissible form or shown to be capable of being presented in admissible form. Fed. R. Civ. P. 56(c)(1)(B), (2) & (4). In considering a motion for

summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Also, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). "[W]hen an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). But when the parties disagree regarding delegation, the court must resolve that question. *Peabody Holding Co., LLC v. United Mine Workers of America, Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). The Fourth Circuit has adopted the federal presumption in favor of arbitration but does not apply that presumption to resolve questions of delegation. *Id.*

## DISCUSSION

Arbitration agreements governed by the FAA are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 3. To determine whether an arbitration agreement exists, "[c]ourts apply 'ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (citations omitted)); *see also AT & T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts

and enforce them according to their terms." (citations omitted)).[5] The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").

Here, Defendants assert that Jacob Devine is subject to four separate agreements that each require arbitration and delegation of arbitrability to the arbitrator. Mot. Mem. 15.  The following list represents the various arguments that I was able to parse from Plaintiff's response in opposition to enforcement of the arbitration agreements, setting forth his position why Plaintiff's claims should not be arbitrated:

- Defendants cannot rely on Microsoft's agreements because they were not affiliates at the time the lawsuit was filed.  Resp. 1, 11-12.  Bethesda is not a party to the Microsoft agreements. *Id.* at 14-16.

- This dispute relates to intellectual property and what was actually licensed to Plaintiff., and the Microsoft arbitration agreements have a carveout for intellectual property disputes. Resp. 1, 11, 14-15.

- Defendants failed to properly provide discovery relating to the agreements. Resp. 2-3, 9-10. Specifically, the Microsoft agreements must be excluded. *Id.* at 10. Defendants withheld Plaintiff's Bethesda.net account documents. *Id.* at 22-23.

- Defendants' declarations are deficient and inadmissible as evidence. Resp. 3-7, 8, 25.

- Plaintiff did not create the Bethesda.net account; his brother created it and used it. Resp. 7, 23. Defendants fail to prove that Plaintiff agreed to any version of any Microsoft agreement. *Id.* at 11-12.

- Plaintiff was a minor at the time the Bethesda.net account was created. Resp. 7. Although the agreements explicitly address their applicability to minor customers, there is no attempt to write the agreements in terms their customers (minor or

---

[5]      The parties agree that Maryland law governs the interpretation of the ZeniMax agreement.  Mot. Mem. 15; Resp. 9. Defendants argue that California law governs the formation of the Microsoft agreements. Mot. Mem. 15.

adult) will understand. *Id.* at 12-13. Because Plaintiff was a minor, he can void the ZeniMax TOS. *Id.* at 23-25. He can also void the Microsoft agreements that were entered into while he was a minor. *Id.* at 23.

- Judicial estoppel prevents Defendants from compelling arbitration because they demanded a jury trial. Resp. 8.

- Defendants' motion rests on questions of contract formation, and the Court should use choice of law rules found in the Uniform Computer Information Transactions Act ("UCITA"), which applies to "computer information transactions. Resp. 8-9. Nevertheless, Plaintiff contends that Maryland law applies. *Id.* at 9.

- The Court, not the arbitrator, decides arbitrability, because the AAA rules (incorporated by reference in the arbitration agreements) do not automatically delegate the question of arbitrability. Resp. 12-14.

- The Microsoft arbitration agreements are unconscionable and illusory. Resp. 19-21. They also violate UCITA. *Id.* at 22.  The ZeniMax TOS also violates UCITA. *Id.* at 25.

- Post-litigation changes to agreements should be invalidated under Federal Rule of Civil Procedure 23(d). Resp. 16-19. Microsoft's emailed updated notices are unenforceable. *Id.* at 22.

Defendants contend that these gateway questions of arbitrability have been delegated to the arbitrator to decide, so the only issue for the Court to decide is whether an enforceable contract was formed between the parties.  Mot. Mem. 15.

Generally, when a court considers whether to compel arbitration, it must determine whether there is an agreement to arbitrate and whether the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). But, "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" may be delegated to the arbitrator to decide." *Rent-A-Center*, 561 U.S. at 68–69. "[P]arties may consent to arbitrate the 'gateway' issue of arbitrability, essentially allowing the arbitrator to determine his or her own jurisdiction" if the parties agree in "clear and unmistakable" language to do so. *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 265 (4th Cir. 2019)

(citing *Rent-A-Center*, 561 U.S. at 68-69; *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999)). "[T]o meet the 'clear and unmistakable' standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator." *Id.* (quoting *Peabody*, 665 F.3d at 103). When the delegation is plainly stated, there are no exceptions, and "courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528, 530-31 (2019).

Importantly, "when a litigant specifically challenges the enforceability of an arbitration agreement with a delegation clause, the challenge must be submitted to the arbitrator unless the plaintiff has lodged a specific objection to the delegation clause (which a court may consider)." *Gibbs*, 967 F.3d at 337; s*ee also Rent-A-Center*, 561 U.S. at 72 ("[U]nless [the party] challenged the delegation provision specifically, we must treat it as valid . . . ."); *Novic*, 757 F. App'x at 266 ("[A]bsent a challenge to the validity of such delegation, courts will not intervene in interpreting the parties' agreement."). Therefore, if the arbitration agreement contains a delegation clause, the court does not reach the question of the arbitration agreement's enforceability unless the delegation clause is specifically challenged, and the court concludes that the delegation clause is not enforceable. When considering whether a challenge has been lodged against the delegation provision with sufficient force and specificity, the Fourth Circuit has "observed that challenges to the overall arbitration agreement could also be specifically directed at the delegation provision." *Gibbs*, 967 F.3d at 337-38 (describing plaintiff's argument that a particular statute rendered "'*any*' arbitration provision" void would necessarily include the delegation provision (quoting *Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017))).

Here, Plaintiff argues that the Court, not the arbitrator, must decide arbitrability, although his only specific challenge to the validity of the delegation provision is that the adoption of the AAA rules is insufficient to serve as a delegation, and the delegation is not clear and unmistakable. Resp. 12-14.  However, Plaintiff also argues that as a minor, he lacked the capacity to contract and can void the severable ZeniMax arbitration agreement by disaffirming it. Resp. 23-25. This argument necessarily includes the delegation clause. Therefore, I find that Plaintiff has sufficiently challenged the delegation provision, and I address the enforceability of the delegation provision in the ZeniMax Media Terms of Service Agreement (ECF No. 141-30).[6]

In *Novic*, the Fourth Circuit concluded that the agreement at issue in that case "plainly empower[ed] the arbitrator to decide any disputes arising from that agreement, including the threshold determination whether a particular dispute is arbitrable." 757 F. App'x at 264.  The language of the delegation clause in that agreement stated that "[c]laims subject to arbitration include ... *the application, enforceability or interpretation of* [the cardholder agreement], *including this arbitration provision.*" *Id.* at 266.  The Court concluded that the language used was similar to the delegation clause in *Rent-A-Center*, which "stated that '[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . *enforceability* . . . of this' agreement." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 68).  The Court specifically noted that the delegation clauses "unambiguously require arbitration of any issues concerning the '*enforceability*' of the arbitration provisions entered into by the respective parties." *Id.* (emphasis added).

---

[6]      I note that the parties do not dispute that Plaintiff purchased the FALLOUT 4 game a few weeks after its release in November 2015, and he purchased the FALLOUT 4 Season Pass on April 19, 2019.  *See* Am. Compl. ¶¶ 22, 29. Defendants have produced evidence that on August 29, 2016, a Bethesda.net account was created and was associated with Plaintiff's email. Waas Decl. ¶ 6, ECF No. 141-28 (ECF No. 142-8 SEALED). At that time, a user could only create a Bethesda.net account by using an internet browser on a computer. Id. ¶ 7. As part of the account creation process, users were required to read and agree to the ZeniMax TOS and check a box confirming that they had done so before being allowed to continue. *Id.* ¶ 11.

Similarly, the ZeniMax TOS includes the following language (with emphasis in italics added):

- The term "Dispute" means any dispute, claim, or controversy . . . and includes, but not limited to, *the validity, enforceability or scope of this Section 15* (with the exception of the enforceability of the Class Action Waiver clause below). "Dispute" is to be given the broadest possible meaning that will be enforced.

- YOU AND ZENIMAX EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, *ANY AND ALL DISPUTES, AS DEFINED ABOVE*, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED *EXCLUSIVELY* AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT OR IN ANY OTHER PROCEEDING IN ACCORDANCE WITH THIS SECTION 15.

- If You reside in North America, the American Arbitration Association ("AAA"), www.adr.org, will arbitrate all Disputes. . . . The arbitrator shall have the *exclusive authority to decide all issues with respect to Section 15, including*, but not limited to *whether any particular claim* asserted by You or ZeniMax *falls within the scope of this Section 15* and any alleged ambiguities in this Section 15.

ZeniMax TOS 1-2, 26-27.

This language unambiguously includes enforceability of the arbitration clause in its definition of a dispute, and it clearly states that the arbitrator has the exclusive authority to decide all issues with respect to the arbitration section of the agreement, including whether a claim falls within the scope of the arbitration provision. Further, as noted by Defendants, courts have held that incorporation of the American Arbitration Association rules constitutes evidence that the parties delegated arbitrability questions to the arbitrator.  *See, e.g.*, *Choice Hotels Int'l, Inc. v. TK Hospitality Grp., LLC*, 18-3364, 2019 WL 6324523, at *3 (D. Md. Nov. 26, 2019) ("Where the agreements explicitly incorporate JAMS or AAA Rules, such provisions constitute 'clear and unmistakable evidence' of intent to arbitrate arbitrability."); *Collins v. Discover Fin. Servs.*, 17-

03011, 2018 WL 6434503, at *2 (D. Md. Dec. 7, 2018) (noting that virtually every Circuit to have considered the issue has determined that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability (citing cases)).

Plaintiff argues that because he was a minor when he entered into the ZeniMax TOS, the Court must decide his defense of capacity to contract.  Resp. 23-24 (citing *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442 (D. Md. 2020)).  Under Maryland law, minors have the capacity to contract, but they "may void contracts other than those for life necessities." *Cherdak*, 437 F. Supp. 3d at 459 (citing *Schmidt v. Prince George's Hosp.*, 784 A.2d 1112, 1116 (Md. 2001)). Specifically, "the law regards contractual obligations of minors as voidable, giving the minor child the choice whether to avoid the contract, or to perform it." *Schmidt*, 784 A.2d at 1122.  As such, although Plaintiff can disaffirm the agreement, making the contract voidable, it becomes void only upon disaffirmance, so the formation of the contract itself is not the issue, and Plaintiff's potential defense is reserved for the arbitrator.  *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022) ("As long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator."); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 884 (6th Cir. 2021) ("[P]laintiffs' infancy defense is a matter of enforceability covered under the delegation provision."). I am satisfied that the parties formed an agreement, and the arbitrator must determine if Plaintiff disaffirmed or ratified it.

Upon review of the arbitration clause's delegation provision, I conclude there is no genuine dispute that the arbitrability questions must be determined by the arbitrator. Under such circumstances, "[a] court has 'no business weighing the merits of the grievance' because the 'agreement is to submit all grievances to arbitration, not merely those which the court will deem

meritorious.'" *Henry Schein*, 139 S. Ct. at 529 (quoting *AT&T Tech.*, 475 U.S. at 650). Plaintiff's legion challenges to the arbitration clause itself, and to the TOS agreement overall, do not prevent me from compelling Plaintiff to submit his challenges to the arbitrator for resolution. *See Novic*, 757 F. App'x at 266 (citing *Rent-A-Center*, 561 U.S. at 71-72). I find that the arbitrator should decide whether the parties have to arbitrate the merits of the case. And because I find that Plaintiff must proceed to arbitration on the basis of the ZeniMax TOS, I do not address the separate Microsoft agreements and related arguments.

The Fourth Circuit has established that if an issue is "'referable to arbitration under an agreement in writing for such arbitration,'" then a stay is mandatory and a motion to compel must be granted. *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3). Therefore, Defendants' motion to compel arbitration, ECF No. 141, is granted, and this case is stayed pending arbitration. While the case is stayed, I find it appropriate to administratively close it, as well as the related case, PWG-21-916,[7] until the conclusion of arbitration proceedings, subject to being reopened on the request of counsel within 30 days of the conclusion of the arbitration proceedings. The parties are further directed to file a joint status report every 180 days until the conclusion of arbitration proceedings. Finally, under these circumstances, I shall defer ruling on Plaintiff's motion, ECF No. 177, while this case remains stayed, inasmuch as his ability to invoke Rule 23(d) turns on whether or not he has waived the right to initiate or participate in class action litigation against the Defendants, an issue that remains to be resolved.

---

[7]     Which relates to a motion to quash Jacob Devine's subpoena to a third party, the resolution of which has been deferred pending resolution of the arbitrability questions raised in this case. *See* Order, ECF No. 33, in PWG-21-916.

**ORDER**

For the foregoing reasons, it is hereby ORDERED that:

1.   Defendants' Motion to Compel Arbitration, ECF No. 141, is GRANTED;

2.   This case is STAYED and ADMINISTRATIVELY CLOSED subject to being reopened on the request of counsel within 30 days of the conclusion of arbitration proceedings;

3.   The parties shall provide a joint status report every 180 days until the conclusion of arbitration proceedings;

4.   The Clerk is directed to ADMINISTRATIVELY CLOSE this case and PWG-21-916.


Date:   October 21, 2022                                  _____/S/_____

                                                         Paul W. Grimm
                                                         United States District Judge